### IRVING TRUST CO. v. COMPANIA MEXICANA DE PETROLEO, LA LIBERTAD, S. A., et al.

### No. 489.

Circuit Court of Appeals, Second Circuit.

July 17, 1933.

Carter, Ledyard & Milburn, of New York City (Ralph Montgomery Arkush, J. M. Richardson Lyeth, and Harries A. Mumma, all of New York City, of counsel), for appellant.

Chadbourne, Hunt, Jaeckel & Brown, of New York City (William M. Chadbourne, Howard H. Brown, Alfred H. Phillips, and Louis B. Eten, all of New York City, of counsel), for appellees.

Before MANTON, L. HAND, and AUGUSTUS N. HAND, Circuit Judges.

MANTON, Circuit Judge.

Appellant, receiver of the Island Refining Corporation, brought this action against the appellees, subsidiaries of the Island Oil & Transport Corporation, for breach of a contract to sell oil. Appellees had oil-producing properties in Mexico. The transport corporation also owned the stock of the refining corporation. The affiliated companies were under common management of Mr. Stevens, who became a receiver of both the refining and the transport corporations. He had been at the head of the enterprise.

On March 17, 1920, the transport corporation and the appellees, as sellers, contracted with the refining corporation and its subsidiaries (Compania Cubana Refinadora Island, S. A., Compania Mexicana Refinadora Island, S. A., and Island Refining Corporation of Louisiana, Inc.) as buyers, for the sale of oil. This contract provided that the sellers agreed to sell and the buyers to purchase all the oil required for the operation of the buyers' proposed refineries for a period of ten years up to the maximum of 50,000,000 barrels. The price per barrel specified was 2 cents less than the current market price at Mexican seaboard, provided that the price should never exceed 42 cents no matter how much higher the current market might be, except for an adjustment for Mexican taxes or for oil beyond a certain gravity. It was agreed that the buyers would give reasonable notice in advance of the monthly requirements and furnish vessels for transporting the oil. Deliveries were to be in Mexico. The amount of 450,000 barrels was fixed as the maximum quantity which the buyers would call for in any one month. A minimum was not specified. The buyers agreed to make payments for oil delivered within 30 days after receipt of each monthly statement from the sellers. An advance payment of $3,000,000 was made to the transport corporation, and the buyers had the right to credit 50 per cent. of the purchase price of oil delivered against this $3,000,000, and the sellers agreed to repay the $3,000,000 either in cash or by such credits before January 1, 1923. There was a force majeure clause which relieved the sellers from liability for stated causes which included failure of production.

The enforcement of these contract obligations as between the companies is important now because of creditors' rights. The refining corporation had an issue of $5,500,000 of bonds under an indenture of October 8, 1919; part of their security being these contract obligations, if any, of the transport corporation and appellees. These bondholders constituted 99 per cent. of refining corporation's creditors. The transport corporation, under a trust agreement of June 15, 1921, issued notes of which $4,136,000 are outstanding. These were secured by a pledge of stock of the Mexican corporations and the stock of the refining corporation. These noteholders by foreclosure have already acquired the stock of the Mexican corporations.

The oil supply contract was not fulfilled according to its terms. Financial difficulties led to a receivership of the transport corporation March 20, 1922, and of the refining corporation January 16, 1923. This intervening

time is referred to as the receivership period. We heretofore considered this claim as made by the receivers of the refining corporation against the transport corporation and then refused to allow a recovery. New York Trust Co. v. Island Oil & Transport Corp. (C. C. A.) 43 F.(2d) 923, rehearing denied (C. C. A.) 45 F.(2d) 157.

The issues presented by this action were heard before a referee who found that the refining corporation was unable to and failed to perform the contract; that the parties in good faith adopted a policy of excusing each other from the performance and each consented to the nonperformance to their best interest; also that the refining corporation never gave notice of its requirements under the contract and never tendered or demanded performance. He also found that the parties engaged in a course of mutual assistance and consent to nonperformance of the contract, which was established before the receivership and continued without objection by the refining corporation throughout the receivership period.

■■ Passing the question as to the conclusiveness of the referee's findings, since both parties request it, we have considered the evidence passed upon below. We have reviewed the merits on this appeal as if tried by a judge without a jury in view of the terms of the stipulation of August 7, 1931. Boatmen's Bank v. Trower Bros. Co., 181 F. 804, 809 (C. C. A. 8). Since the parties in consenting to this reference agreed that a judgment may be entered in conformity to the referee's report, that provision should be carried out irrespective of what the procedure would be in its absence. Hecker v. Fowler, 2 Wall. (69 U. S.) 123, 17 L. Ed. 759; Grant v. Nat. Bank of Auburn (D. C.) 221 F. 1007. The stipulation provides that the reference shall be with the same force and effect as if the case was tried by the court.

During the prereceivership period, the proceeds of the refining corporation's bonds did not supply sufficient funds to carry out the oil supply contract. The proceeds were $4,831,590, $3,000,000 of which were advanced to the transport corporation. The Sarpy plant, which the refining corporation constructed, cost nearly $3,000,000, and the Palo Blanco plant nearly $1,000,000. The working capital was inadequate. It resulted in a policy of accommodation by each corporation to the other to suit their best interests. This was required because of the financial situation which confronted each. The refining corporation's board of directors understood and acquiesced.

Instances of mutual accommodation may be referred to. The transport corporation repaid the $3,000,000 before it was due to supply funds to finish refineries of the refining corporation. The transport corporation allowed the refining corporation to credit all the purchase price of oil delivered against the $3,000,000 advance, although the contract required the refining corporation to pay at least 50 per cent. in cash. It chartered vessels for the refining corporation although the contract did not require it to do so. It supplied 641,326 barrels of oil which the transport corporation had purchased from third parties during a force majeure period, although not required. This was supplied at cost, plus a nominal handling charge. The transport corporation supplied large quantities of oil at the contract price of 42 cents, although the market was greatly in excess thereof. The refining corporation consented to the sale of large quantities to third parties at prices substantially higher than 42 cents per barrel, and the refining corporation purchased large quantities at the market from third parties. The refining corporation loaned oil to the transport corporation which it had purchased at market, some as high as $2 per barrel. This was regarded as beneficial to both. The referee found that "The assistance which the Transport Company gave Refining Company was one of the causes of the financial difficulties and receivership of Transport Company." All deliveries of oil under the contract ceased November 15, 1921. The refining corporation then, at Mr. Stevens' suggestion, availed itself of the opportunity to purchase large quantities of oil from third parties at the market. The refining corporation consented to this arrangement in writing and made no demand for performance of the oil supply contract, nor did it assert a claim for damages, but stated that the arrangement should in no way decrease the quantity of oil due under the contract and that "all questions of adjustment should be deferred for the time being."

No claim is now made for damages for nonperformance during the prereceivership period. But there was no change in the policy of mutual waiver and assistance up to the time of the appointment of the refining corporation's receivers. The general conduct of the parties establishes that the refining corporation waived deliveries of oil under the contract in the best interest of all. They waived furnishing oil at 42 cents per barrel. The good faith of all in this regard is conceded. One of the inducing causes of this spirit of assistance was to permit the oil

from the Mexican properties to be sold at the market in order to raise funds to pay heavy past-due taxes.

It was found, properly, that on March 20, 1922, and thereafter the refining corporation was unable to pay all its debts as they became due and the parties knew it. It defaulted in its interest. After March 20, 1922, operation of the Sarpy refinery depended upon the transport corporation's furnishing it with oil which it was financially unable to purchase in substantial quantities from third parties. Up to April 30, 1923, thirteen months after the transport corporation receivership, and three months after the refining corporation receivership, no claim was made for damages for the breach of this contract. The claim for damages was first made here by the trustees of the refining corporation's bondholders and failed. New York Trust Co. v. Island Oil & Transport Corp. (C. C. A.) 34 F.(2d) 649. This claim again failed when made by the present appellant, 43 F.(2d) 923, and there we said at page 928, "that none of the claims set up by the receiver of the refining company has real substance. The claim for each period abounds in all kinds of legal difficulties which we are inclined to regard as incompatible with any award of damages. * * * We are of the opinion that the claim is too unsubstantial to warrant the delay and expense of further litigation and that the discretion of the court below was fairly exercised." Speaking of the anticipatory breach, we said at page 927 of 43 F.(2d): "The refining company perhaps thought it was likely to gain little by exercising such an option, and regarded the chance of obtaining oil at 42 cents from a reorganized company as worth the risk of delay. At any rate, it neither adopted the breach nor demanded oil under the contract, nor gave notice of its requirements. Before it did anything in these matters, it was placed in the hands of receivers on January 16, 1923, and thereby disabled from performance on its own part. Under such circumstances it cannot substantiate any claim to damages for the period succeeding March 20, 1922. If the refining company relies on a present breach by the transport company in failing to deliver installments under the contract between March 20, 1922, and January 16, 1923, it has neither given any proof of notice to the transport company of its requirements of oil, nor has it demonstrated ability on its part to take and pay in cash for oil which might be delivered."

In the proceedings just referred to, the appellant based its claim for damages on the difference between the market price and the contract price of the entire amount of oil which the Sarpy and Blanco refineries were physically capable of refining, less the amount of oil actually delivered to the refining corporation under the contract of 42 cents per barrel. In the present case, appellant bases its claim for damages on the difference between the market price of oil actually purchased by the refining corporation and the value of the same quantity of oil at the contract price of 42 cents per barrel. The present claim was included in the prior claim. The amount of oil actually refined was included in the physical capacity of the refinery. If there were breaches of the contract, they occurred long before the former proceedings. An actual present breach, occurring after the receivership, gives rise to a provable claim provided allowing the claim to be proved will not delay distribution of the estate. Pennsylvania Steel Co. v. New York City Ry. Co., 198 F. 721 (C. C. A. 2). A partial breach, occurring after the receivership, may be treated as an entire breach which relates back to the day when the receivers were appointed, so that damages are measured by the market price of the commodity at that date. Samuels v. E. F. Drew & Co., 292 F. 734 (C. C. A. 2).

On November 28, 1921, the refining corporation wrote to the transport corporation stating that it accepted Mr. Stevens' suggestion that it purchase a large quantity of oil from an outside party at the market. The letter said: "It is understood that this arrangement in no way decreases the quantity of oil due us from you under our agreement dated April 15, 1919, and all questions of adjustment between us arising out of this arrangement shall be deferred for the time being." Appellant says this did not waive its claim. At best, the refining corporation reserved the right in the future to call for the entire undelivered balance of oil due under this oil supply contract. But the contract contemplated that the refining corporation might have requirements in excess of 450,000 barrels per month, and gave the sellers the option to furnish these requirements under the contract. An attempt to insist upon present deliveries in accordance with the contract would have been disastrous to the refining corporation. So the refining corporation, in consenting to a postponement for the time being, was acting in its best interest. Thomson v. Poor, 147 N. Y. 402, 42 N. E. 13.

On May 25, 1922, a letter was written in behalf of Compania Mexicana Refinadora Island, S. A., requiring that a demand be made

upon the appellees for the balance of the oil remaining undelivered to the Refinadora under a contract separate and distinct from the oil supply contract. This letter indicates that the refining corporation's subsidiary was alive in asserting its rights and demanding performance when it thought it had a duty so to do and an obligation to enforce.

We will not disturb the findings of the referee who reached his conclusions on conflicting evidence. Nor are we persuaded by the additional evidence offered in this trial to reach a different conclusion than that reached when the case was here before. To be sure, the appellant was within its rights in presenting the claim in its present form. The Francis Wright, 105 U. S. 381, 26 L. Ed. 1100. But we think the conclusion should be the same, and that the referee's conclusions were right. Stanley v. Supervisors of Albany County, 121 U. S. 535, 7 S. Ct. 1234, 30 L. Ed. 1000; United States v. Rhodes (C. C. A.) 49 F.(2d) 228.

Since the refining corporation agreed with the transport corporation and the appellees that they need not perform the contract for the time being, even though such consent might be revoked at any time, appellant cannot hold appellees to perform according to the terms of the original contract unless and until it made a demand on appellees for performance and expressly informed appellees that the refining corporation had terminated the period of tolerance. Swain v. Seamens, 9 Wall. (76 U. S.) 254, 19 L. Ed. 554; Smiley v. Barker, 83 F. 684 (C. C. A. 8); Thomson v. Poor, 147 N. Y. 402, 42 N. E. 13; Williston on Contracts, vol. 2, § 690. The refining corporation failed to give notice and to demand performance, and this is fatal to a claim of damages. New York Trust Co. v. Island Oil & Transport Corp., 43 F.(2d) 923 (C. C. A. 2); Alpena Portland Cement Co. v. Backus, 156 F. 944 (C. C. A. 8).

In view of the conclusions we have reached, it becomes unnecessary to consider the defense urged that in an action against one of a number of joint and several obligors, a successful defense not personal to the defendant but going to the merits of the cause of action bars a subsequent action against another obligor who was not a party to the former suit.

We conclude that the appellant has failed to establish an actionable breach of the contract, and that the judgment below must be affirmed.

Judgment affirmed.