**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**March 4, 2011**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

DAVID K. BROADBENT,

      Plaintiff - Appellee,

SECURITIES AND EXCHANGE
COMMISSION,

      Plaintiff,

v.

ADVANTAGE SOFTWARE, INC.;
PORTIA SEELEY; GREG SEELEY,

      Defendants - Appellants,

and

MERRILL SCOTT & ASSOCIATES,
INC.; GIBRALTAR PERMANENTE
ASSURANCE; MERRILL SCOTT &
ASSOCIATES, LTD; MICHAEL G.
LICOPANTIS; PHOENIX OVERSEAS
ADVISERS; PATRICK M. BRODY,

      Defendants.

No. 09-4180
(D. Ct. No. 2:02-CV-00039-TC-DN)
(D. Utah)

---

**ORDER AND JUDGMENT**[*]

---

Before **KELLY**, **TACHA**, and **MURPHY**, Circuit Judges.

---

    [*] This order and judgment is not binding precedent except under the doctrines of law of the case, res judicata and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

Defendants-appellants Advantage Software, Inc. ("ASI"), Greg Seely, and Portia Seely (collectively "appellants") appeal from the district court's order, which effectively denies them any recovery from the receivership estate of Merrill Scott & Associates, Ltd. ("Merrill Scott"). We have jurisdiction under 28 U.S.C. § 1291 and AFFIRM.

## I. BACKGROUND

Mr. and Mrs. Seely are the principal shareholders of ASI, a company which markets and sells court reporting software. In 1987, ASI engaged Jeremy Thorne to develop court reporting software called Eclipse. ASI and Mr. Thorne agreed that Mr. Thorne would develop the Eclipse software and grant ASI the exclusive right to market and sell it. In exchange, ASI agreed to pay Mr. Thorne a percentage of the gross sales.

By 1998, the Eclipse software was selling successfully, and ASI's accountant, Wayne Riella, advised Mr. and Mrs. Seely to consider hiring Merrill Scott to assist them with "asset protection issues." The Seelys retained Merrill Scott's services, and Merrill Scott presented them with a Master Financial Plan ("MFP") which was intended to, among other things, reduce ASI's tax liability and protect its assets from creditors.

In accordance with the MFP, Greg Seely signed a license agreement with Lennox, Squire & Associates, Ltd. ("Lennox Squire"), an offshore shell company created and completely controlled by Merrill Scott. Under the license agreement, ASI granted Lennox Squire "worldwide rights to all sales, marketing and distribution rights to the Software." "Software," as defined by the license agreement, means "the intellectual

property created and developed by ASI [] which is presently in the marketplace," as well as "[a]ll 'software' (intellectual property) product created and or acquired by ASI during the term of this Agreement and for a period of one (1) year following termination of this Agreement." In exchange for the transfer of ASI's software rights, Lennox Squire agreed to pay ASI $2.5 million over ten years in yearly installments of $250,000, as well as 5% of the net profits whenever annual profits from software sales exceeded $1 million.

Additionally, Lennox Squire granted ASI the right to use, market, and sell the software in the United States in exchange for royalty payments, which Mr. Seely believed would be held by Lennox Squire for his benefit. This royalty agreement and the precise terms thereof, however, are not expressly provided for in the license agreement.

This arrangement served three primary purposes: (1) it provided Mr. Seely with what he believed was a tax-deferred retirement account; (2) it allowed ASI to claim tax deductions for the royalty payments; and (3) it allowed ASI to disclaim ownership of the software when it was advantageous for it to do so. Indeed, from March 1999 to October 2001, ASI made four royalty payments to Lennox Squire totaling $1,557,044, and it claimed these payments as tax deductible expenses in its 1999 and 2000 tax returns. Furthermore, ASI disclaimed ownership of the Eclipse software when it was sued by a competitor for copyright infringement and other unfair business practices. Specifically, in response to an interrogatory in that litigation, ASI averred that it "created a tax and estate plan under which the copyright to the Eclipse software w[as] transferred and/or sold to an international corporation known as Lennox Squire."

In 2000, Lennox Squire remitted the first $250,000 installment payment to ASI when it came due, but it never made another installment payment. ASI, however, deducted $250,000 from one of its royalty payments, and eventually stopped making royalty payments altogether when it recognized that the installment payments were no longer forthcoming from Lennox Squire. Nevertheless, from 2001 to 2006, ASI continued to sell the Eclipse software, and it made substantial profits from those sales.

In 2002, the Securities and Exchange Commission ("SEC") brought a civil enforcement action against Merrill Scott, its principals, and its subsidiaries. In essence, the SEC accused Merrill Scott of perpetrating a massive Ponzi scheme that attracted over $60 million in unwitting investments. Shortly after the SEC filed its action, the district court appointed a receiver to identify, liquidate, and distribute Merrill Scott's assets to the myriad victims of the company's scheme. On October 27, 2004, Mr. Seely, on behalf of ASI, submitted a claim form to the receiver, listing $2,001,060.23 in investments and $250,000 in returns, for a total claim of $1,751,060.23. The majority of ASI's claim was comprised of the roughly $1.5 million in royalty payments it paid to Lennox Squire from 1999 to 2001. Indeed, the claim form states that "ASI made various payments to Lennox [] totaling $1,557,044, which ASI understood were to be royalties due under the agreement with Lennox."

In May 2006, the receiver filed a motion to determine ownership of assets, in which he alleged that, pursuant to the license agreement, the Eclipse software was part of the receivership estate. Appellants opposed the motion, arguing that the license

agreement was unenforceable under a number of contract theories. Out of concern that Mr. Thorne, the developer of the Eclipse software, may have an interest in the dispute, and after determining that Mr. Thorne had no notice of the receiver's motion, the district court concluded that it could not decide the matter without Mr. Thorne's participation.

On January 2, 2007, the district court approved the receiver's plan for partial pro rata distribution. Although the district court did not specifically address ASI's claim, it approved the plan's proposed treatment of similarly situated Merrill Scott clients who had purchased Equity Management Mortgages ("EMM"). The EMM clients, like ASI, had transferred valuable assets to Merrill Scott entities by granting trust deeds on their real property, and they had received "friendly mortgages" in return. Under this arrangement, the EMM clients were able to deduct the mortgage interest payments on their tax returns, and they were able to create the appearance that their real property was encumbered by the EMM in order to deter creditors from foreclosing on the encumbered property. Significantly, in approving the receiver's plan, the district court concluded that any outstanding debts owed by EMM clients to Merrill Scott entities on the "friendly mortgages" should be treated as debts owed to the receivership estate. Accordingly, any distribution to EMM clients was offset by these outstanding debts.

In 2008, the receiver filed an adversary complaint against ASI and the Seelys, raising both legal and equitable causes of action. The complaint alleged that: (1) under the license agreement, ASI transferred its rights in the Eclipse software to Lennox Squire; (2) ASI agreed to pay Lennox Squire royalties for its continued sales of the Eclipse

software; and (3) ASI failed to pay substantial royalties which it owed to Lennox Squire. In other words, the receiver's complaint sought to recover, under both legal and equitable theories, the outstanding royalties ASI owed to Lennox Squire from its sales of Eclipse software from 2001 to 2006.

Both ASI and the receiver sought summary judgment on the receiver's complaint. ASI's motion argued that the receiver's complaint was barred by the statute of limitations, and that it, not the receiver, owned the software rights. The receiver's motion, on the other hand, argued that to the extent ASI's claim is based on the royalty payments it made from 1999 to 2001, its claim should not be allowed because those payments were rightly owed to Lennox Squire. Furthermore, the receiver argued that any remaining claim ASI may have against the estate was more than offset by the outstanding royalties owed by ASI to Lennox Squire. Finally, the receiver expressly did not seek to recover outstanding royalties that exceeded the amount of ASI's allowable claim, and he disclaimed any continuing interest in retaining rights in the Eclipse software. In sum, the receiver sought to deny ASI any recovery from the receivership estate, but he did not seek to recover further sums from ASI on behalf of the estate, nor did he seek to retain ownership of the software rights.

ASI opposed the receiver's motion raising various contract law arguments. Generally, ASI argued that both ASI and Lennox Squire had immediately breached and/or abandoned the license agreement and therefore the purported transfer of software rights from ASI to Lennox Squire was unenforceable. Additionally, ASI argued that the

receiver could not prove a binding agreement to pay royalties and therefore ASI's claim should be allowed and should not be reduced by the amount of any royalties it allegedly owed to Lennox Squire.

The district court resolved the parties' summary judgment motions on September 17, 2009, noting at the outset of its order that "[b]ecause this is an equitable matter, the Seelys' traditional contract law and statute of limitations arguments carry little weight." The court later reiterated this position, stating that "[t]he Seelys' and ASI's formal contract law and statute of limitations arguments do not work here because they are trying to fit a round peg into a square hole (Merrill Scott's representations were a sham in a world where legal formalities were ignored and funds were commingled)." In accordance with this general approach, the district court summarily denied ASI's summary judgment motion because it concluded that a strict application of the statute of limitations would unfairly elevate ASI's position over that of other similarly situated claimants.

Next, the district court held that: (1) under the license agreement, ASI transferred its rights in the Eclipse software to Lennox Squire; (2) Lennox Squire permitted ASI to continue selling the Eclipse software in exchange for royalty payments; (3) ASI continued to sell the Eclipse software from 2001 to 2006 without making the required royalty payments; and (4) the amount of outstanding royalty payments owed to Lennox Squire vastly exceeded any allowable claim ASI retained against the receivership estate. Accordingly, the district court disallowed the roughly $1.5 million of ASI's claim which was based on the royalty payments it made to Lennox Squire from 1999 to 2001, and it

offset the remainder of ASI's claim with the outstanding royalty payments it owed to Lennox Squire, as it had done with the EMM clients' outstanding mortgage payments.

Notwithstanding the district court's conclusion that the outstanding royalty payments greatly exceeded ASI's remaining allowable claim, however, the court did not require ASI to pay the remaining balance into the estate. Rather, it simply held that ASI could not recover anything from the receivership estate. Furthermore, the district court ordered that Lennox Squire's rights to the Eclipse software must revert back to ASI.

## II. DISCUSSION

On appeal, appellants raise various arguments which can fairly be distilled into three points: (1) the district court erred in summarily rejecting appellants' statute of limitations and various contract law arguments; (2) the district court erred in concluding that ASI transferred its rights in the Eclipse software to Lennox Squire; and (3) the district court erred in holding that ASI owed outstanding royalties to Lennox Squire which could be offset against ASI's allowable claim.

"It is generally recognized that the district court has broad powers and wide discretion to determine relief in an equity receivership." *SEC v. Vescor Capital Corp.*, 599 F.3d 1189, 1194 (10th Cir. 2010) (quotations and ellipses omitted); *see also Quilling v. Trade Partners, Inc.*, 572 F.3d 293, 298 (6th Cir. 2009); *SEC v. Elliott*, 953 F.2d 1560, 1569–70 (11th Cir. 1992); *SEC v. Hardy*, 803 F.2d 1034, 1037 (9th Cir. 1986) ("[A] district court's power to supervise an equity receivership and to determine the appropriate

action to be taken in the administration of the receivership is extremely broad."). "The basis for broad deference to the district court's supervisory role in equity receiverships arises out of the fact that most receiverships involve multiple parties and complex transactions," and the fact that "a primary purpose of equity receiverships is to promote orderly and efficient administration of the estate by the district court for the benefit of the creditors." *Hardy*, 803 F.2d at 1037–38. "A district judge simply cannot effectively and successfully supervise a receivership and protect the interests of its beneficiaries absent broad discretionary power." *Id.* at 1038.

Accordingly, in fashioning relief in an equity receivership, a district court has discretion to summarily reject formalistic arguments that would otherwise be available in a traditional lawsuit. *See Holmberg v. Armbrecht*, 327 U.S. 392, 396 (1946) ("Traditionally and for good reasons, statutes of limitation are not controlling measures of equitable relief."); *see also Quilling*, 572 F.3d at 299 (quoting *Liberte Capital Group v. Capwill*, 148 F. App'x 426 (6th Cir. 2005)) ("Contractual claims notwithstanding, the insurance policies Liberte purchased were made part of an equitable receivership subject to the court's discretion."); *United States v. Durham*, 86 F.3d 70, 73 (5th Cir. 1996) ("No one can dispute that tracing would have been permissible under the circumstances of this case . . . [h]owever, the court in exercising its discretionary authority in equity was not obliged to apply tracing."); *United States v. Vanguard Investment Co.*, 6 F.3d 222, 227 (4th Cir. 1993) ("[A] district court in its discretionary supervision of an equitable receivership may deny remedies like rescission and restitution where the equities of the

situation suggest such a denial would be appropriate."); *Elliott*, 953 F.2d at 1569 ("We cannot say that the district court abused its discretion by disallowing tracing.").

In this case, it was proper for the district court to summarily reject appellants' statute of limitations and various contract law arguments in favor of treating appellants like all other similarly situated claimants. Indeed, the district court is authorized and expected to determine claims in an equity receivership based on equitable, rather than formalistic, principles.

The district court also properly held that ASI transferred its rights in the Eclipse software to Lennox Squire under the license agreement. Given the broad language of the license agreement, which grants Lennox Squire "worldwide rights to all sales, marketing and distribution rights of the Software," and given ASI's representation in other litigation that it "created a tax and estate plan under which the copyright to the Eclipse software w[as] transferred and/or sold to an international corporation known as Lennox Squire," the district court did not abuse its discretion in holding that ASI transferred its rights in the Eclipse software to Lennox Squire and that those rights ultimately became property of the receivership estate. *See F.T.C. v. Assail, Inc.*, 410 F.3d 256, 262 (5th Cir. 2005) (reviewing a district court's determination that certain assets are part of a receivership estate for abuse of discretion).

Moreover, the record clearly supports the existence of a royalty agreement between ASI and Lennox Squire. Indeed, ASI represented in its claim form and its motion for summary judgment that it believed the roughly $1.5 million it paid to Lennox

Squire from 1999 to 2001 was for royalties owed to Lennox Squire. And, ASI claimed tax deductions for these royalty payments in 1999 and 2000.[2] Finally, by enforcing the royalty agreement and holding ASI accountable for its unpaid royalties, the district court properly treated ASI the same as it treated the EMM clients who were similarly situated. For these reasons, the district court did not abuse its discretion in holding that ASI owed Lennox Squire, and consequently the receivership estate, royalties for its sales of Eclipse software from 2001 to 2006.

Lastly, the district court did not abuse its discretion in concluding that the amount of ASI's outstanding royalties vastly exceeded the remainder of its allowable claim, nor did it err in permitting the receiver to offset ASI's claim with the unpaid royalties. The district court estimated the amount of the outstanding royalties by first extrapolating the amount of ASI's gross sales of Eclipse software from the royalties it had paid to Jeremy Thorne. The district court then determined that ASI paid roughly 18% of those gross sales to Lennox Squire from 1999 to 2001, which provided it with an estimate of the percentage of gross sales that were owed to Lennox Squire under the royalty agreement. Finally, having concluded that ASI sold approximately $25 million in Eclipse software from 2001 to 2006 without paying any royalties to Lennox Squire, the district court easily concluded that the amount of outstanding royalties greatly exceeded the $194,016.23 remaining on ASI's allowable claim.

_____

[2] Contrary to appellants' contentions, the fact that they amended their tax forms after the SEC discovered Merrill Scott's scheme does not demonstrate that a royalty agreement never existed.

Although the district court's calculations were admittedly estimates, appellants failed to produce any evidence which would rebut the district court's figures. Furthermore, by allowing the receiver to offset the remainder of ASI's claim with the estimated amount of the outstanding royalty payments, the district court, again, properly treated ASI as it had treated the similarly situated EMM clients. For these reasons, the district court did not abuse its discretion in calculating the amount of the outstanding royalty payments or in allowing the receiver to offset the remainder of ASI's claim.

### III.  CONCLUSION

For the foregoing reasons, we AFFIRM the district court's order.

ENTERED FOR THE COURT,


Deanell Reece Tacha
Circuit Judge