**SECURITIES AND EXCHANGE COMMISSION, Plaintiff,**

v.

**Mark DRUCKER, Defendant.**

**Civil Action No. 1:99–CV–2687–TWT.**

United States District Court,
N.D. Georgia,
Atlanta Division.

May 21, 2004.

William P. Hicks, Securities & Exchange Commission, Edward H. Saunders, Wilson Strickland & Benson, Atlanta, GA, for Plaintiff.

Craig A. Gillen, Gillen Parker & Withers, Michael Weinstock, Adam Matthew Gleklen, Weinstock & Scavo, Bruce Howard Morris, Finestone & Morris, Atlanta, GA, Pat Huddleston, II, Huddleston & Nohr, Marietta, GA, for Defendants.

William T. Mitchell, Cruser & Mitchell, Norcross, GA, Andrew J. McGuinness, Dykema Gossett, Ann Arbor, MI, for Intervenor.

Barry L. Anderson, Schweber Izenson & Anderson, Atlanta, GA, for Claimants.

## ORDER

THRASH, District Judge.

This is a securities fraud enforcement action. It is before the Court on the Plaintiff's Motion for Approval of Distribution Plan [Doc. 85] and Intervenor Lindsay Gross' Objections to the Motion [Doc. 86]. For the reasons set forth below, this Court GRANTS the Plaintiff's Motion for Approval of Distribution Plan.

## I. *BACKGROUND*

On October 15, 1999, the Securities and Exchange Commission filed its complaint in this matter seeking from Defendant Mark Drucker and Relief Defendant Michael Weinstock the return of funds obtained in the course of Defendant Drucker's Ponzi scheme. By declaration dated October 27, 2000, Drucker consented to payment of the proceeds of his SouthTrust Bank account (the "Ponzi Account") into the registry of the Court. The balance in the account was $34,030.68. On May 14, 2001, pursuant to a settlement with the SEC, Relief Defendant Weinstock deposited $330,893 into the registry of the Court. Neither the Commission nor the Court has accused Weinstock of any complicity in Defendant Drucker's Ponzi scheme. The Commission merely sought the return of the profits Weinstock unjustly received from the scheme. As of March 15, 2004, the Court registry contained $394,752 in this matter. According to the Commission's calculations, the investors have lost approximately $3,397,085 through the Ponzi scheme. The Commission recommends that the funds obtained be distributed pro rata to the investors.

Mr. Lindsay Gross lost about $700,000 in Drucker's Ponzi scheme. On August 13, 1999, Gross wired $550,000 into the Ponzi Account. The Ponzi Account had a cash balance of $97,540.16 prior to the $550,000 deposit. Later that same day, Defendant Drucker wired $635,000 from the Ponzi Account into Weinstock's Wachovia account. On June 28, 2002, this Court granted Gross's motion to intervene in these proceedings with regard to the distribution of the recovered funds. Because Gross contends that the vast majority of the funds paid out to Weinstock (and subsequently recovered through settlement with the Commission) are traceable to his $550,000 deposit, Gross argues that a pro rata distribution of these funds to all investors is unjust and inequitable.

## II. *DISCUSSION*

■ The question presented to this Court is how to distribute the funds obtained from Defendant Drucker's bank account and the settlement with Relief Defendant Weinstock. In making this determination, this Court is guided by two general principles. The first is that the Court has "broad powers and wide discretion" in determining the appropriate relief in a restitution order. *SEC v. Elliott,* 953 F.2d 1560, 1569–70 (11th Cir.1992); *see also SEC v. Forex Asset Management LLC,* 242 F.3d 325, 331 (5th Cir.2001); *United States v. Durham,* 86 F.3d 70, 72–73 (5th Cir.1996) ("In entering a restitution order, adherence to specific equitable principles, including rules concerning tracing analysis are 'subject to the equitable discretion of the court.' ").

■ The second broad principle recognized and relied upon by this Court is that when victims seeking restitution occupy similar positions, a pro rata distribution is preferred. *See Elliott,* 953 F.2d at 1570 ("The Supreme Court has recognized that, in equity, certain tracing rules should be suspended.") (citing *Cunningham v. Brown,* 265 U.S. 1, 44 S.Ct. 424, 68 L.Ed. 873 (1924)). Indeed, of the Supreme Court's decision in *Cunningham* regarding the original Ponzi scheme, the Eleventh Circuit noted that where claimants occupied essentially the same legal position as

other victims, "equity would not permit them a preference; for 'equality is equity.'" *Id.* (quoting *Cunningham,* 265 U.S. at 13, 44 S.Ct. 424). Thus, where a victim seeking preferential treatment cannot materially distinguish his situation from that of other victims, a pro rata distribution is recognized as the most equitable solution.

■ In the instant case, Intervenor Lindsay Gross contends that he is in a materially different position than the other investors victimized by Defendant Drucker's Ponzi scheme. The primary, and indeed only potentially significant, difference between Gross and other investors is that Gross' investment was the last money into the Ponzi Account before the distribution to Weinstock, and thus can, at least in part, be directly traced to the funds paid out to Weinstock. Gross' argument has some merit due to the timing of his payment into the Ponzi Account, and the relative ease of tracing the payment to Weinstock. Nevertheless, in the final analysis, the difference between Gross' situation and that of the other investor victims is not of sufficient magnitude to warrant departure from a pro rata distribution. Indeed, the timing and traceability of Gross' payment could be deemed fortuitous. And, Weinstock received more than just Gross' money. The Ponzi Account had a cash balance of $97,540.16 before Gross' $550,000 deposit was wired into it. From this total of $647,540.16, $635,000 was paid to Weinstock. The commingling of the funds and ambiguity regarding the source of the payment to Weinstock undercut the applicability, if not the practicality, of Gross' tracing argument. Moreover, this case can easily be distinguished from *SEC v. P.B. Ventures,* 1991 WL 218115, 1991 U.S. Dist. LEXIS 17901 (E.D.Pa. Dec. 10, 1991), because P.B. Ventures dealt with tracing of a res (stock) and not solely commingled funds. As the timing of Gross' deposit provides insufficient reason to distinguish Gross' loss from that of the other similarly victimized investors, this Court holds that a pro rata distribution of the funds obtained from Defendant Drucker and former Relief Defendant Weinstock is the most equitable solution.

### III. *CONCLUSION*

For the reasons set forth above, the Court GRANTS the Plaintiff's Motion for Approval of Distribution Plan [Doc. 85]. The Commission is ordered to mail notice of the proposed final distribution plan to the last known address of each of the victimized investors by June 1, 2004. Such notice must state: (1) the sum to be paid to the investor under the plan; (2) that any objections to the plan are to be filed with this Court by June 15, 2004; and (3) that a hearing on any such objections has been scheduled for 9:30 a.m. on July 8, 2004.

SO ORDERED, this 21day of May, 2004.