

2007 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

4-5-2007

# US SEC v. Infinity Grp Co

Precedential or Non-Precedential: Non-Precedential

Docket No. 06-4158

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2007

Recommended Citation

"US SEC v. Infinity Grp Co" (2007). *2007 Decisions.* Paper 1339.
http://digitalcommons.law.villanova.edu/thirdcircuit_2007/1339

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2007 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———————

No. 06-4158

———————

UNITED STATES SECURITIES AND EXCHANGE COMMISSION

v.

THE INFINITY GROUP COMPANY; GEOFFREY P. BENSON;
GEOFFREY J. O'CONNOR; FUTURES HOLDING COMPANY;
SLB CHARITABLE TRUST; SUSAN L. BENSON;
JGS TRUST; LINDSAY SPRINGER; BONDAGE BREAKER MINISTRIES


LINDSAY SPRINGER; BONDAGE BREAKER MINISTRIES,
                                        THIRD-PARTY PLAINTIFFS

v.

THE UNION STATES OF THE CONSTITUTION, i.e.,
ALASKA; ALABAMA; ARKANSAS; ARIZONA; CALIFORNIA;
COLORADO; CONNECTICUT; DELAWARE; FLORIDA; GEORGIA;
HAWAII; IOWA; ILLINOIS; INDIANA; KANSAS; KENTUCKY;
LOUISIANA; MASSACHUSETTS; MARYLAND; MAINE; MICHIGAN;
MINNESOTA; MISSOURI; MISSISSIPPI; MONTANA; NORTH CAROLINA;
NORTH DAKOTA; NEBRASKA; NEW HAMPSHIRE; NEW JERSEY; NEW
MEXICO; NEVADA; NEW YORK; OHIO; OKLAHOMA; OREGON;
PENNSYLVANIA; RHODE ISLAND; SOUTH CAROLINA; SOUTH DAKOTA;
TENNESSEE; TEXAS; UTAH; VIRGINIA; VERMONT; WISCONSIN;
WEST VIRGINIA; WYOMING; WASHINGTON;
FEDERAL STATE DISTRICT OF COLUMBIA,
                                        THIRD-PARTY DEFENDANTS

                                Edward W. Roberts,
                                        Appellant

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
D.C. Civil Action No. 97-cv-5458
(Honorable Stewart Dalzell)

Submitted Pursuant to Third Circuit LAR 34.1(a)
March 6, 2007

Before: SCIRICA, Chief Judge, FUENTES and SMITH, Circuit Judges

(Filed: April 5, 2007)

OPINION OF THE COURT

PER CURIAM.

Edward W. Roberts invested $30,000 in an entity called the Infinity Group

Company Trust ("TIGC"), which turned out to be a "Ponzi" scheme that brought in some

$26.6 million from over 10,000 investors.[1] The SEC obtained an order freezing TIGC's

assets, and the District Court appointed a receiver to marshal those assets and hold them

in trust for distribution to the defrauded investors. Over 4,800 investors, including

Roberts, filed claims. The receiver ultimately recovered and distributed funds sufficient

to cover 55 percent of each claimant's investment, which means that Roberts has

recouped $16,500.

_____

[1]The parties are familiar with the background of this case. All others are referred to
SEC v. Infinity Group Co., 212 F.3d 180 (3d Cir. 2000), which sets forth the nature and
history of the scheme in some detail.

The receiver decided that the only fair and practicable way of distributing TIGC's assets was on a pro rata basis to each investor. Roberts objected to this form of distribution for the reason discussed below, but the District Court approved it and overruled Roberts's objection in 2000. Roberts filed an appeal, but we dismissed it for lack of jurisdiction because the District Court had not yet entered a final order. The District Court has now entered a final order terminating the receiver's trusteeship and again overruling Roberts's (oft-renewed) objection, and Roberts appeals pro se from that order. For the reasons that follow, we will affirm.[2]

District Courts have wide equitable discretion in fashioning distribution plans in receivership proceedings, and we review the District Court's order only for abuse of that discretion. See Black, 163 F.3d at 199; SEC v. Fischbach, 133 F.3d 170, 175 (2d Cir. 1997). We do not believe that the District Court abused its discretion here. In the original Ponzi scheme case, Cunningham v. Brown, 265 U.S. 1 (1924), the Supreme Court held that "tracing" fictions should not be used to pursue individual recoveries when a fraud ensnares multiple victims whose funds are commingled. See id. at 12-13. Instead, the Court held that all innocent victims should share equally in the recovered funds because equity demands equal treatment. See id.

Since then, the Courts of Appeals repeatedly have recognized that pro rata distribution of a defrauder's assets to multiple victims of the fraud is appropriate and that

_____

[2]We have jurisdiction pursuant to 28 U.S.C. § 1291.

District Courts act within their discretion in approving such distributions.  See, e.g., SEC v. Credit Bancorp, Ltd., 290 F.3d 80, 89 (2d Cir. 2002) (explaining that "the use of a pro rata distribution has been deemed especially appropriate for fraud victims of a 'Ponzi' scheme" and collecting cases); United States v. 13328 and 13324 State Highway North, 89 F.3d 551, 553-54 (9th Cir. 1996) (collecting cases).  This is so even when circumstances that do not provide any equitable basis to distinguish between investors make it possible to trace particular investors' assets.  See, e.g., Credit Bancorp, 290 F.3d at 89 (affirming pro rata distribution where tracing possible as a result of "merely fortuitous" events); United States v. Durham, 86 F.3d 70, 73 (5th Cir. 1996) (same); SEC v. Forex Asset Mgmt. LLC, 242 F.3d 325, 331-32 (5th Cir. 2001) (affirming pro rata distribution where objecting investors' funds were segregated in a separate account and never commingled).

Roberts, however, argues that he is entitled to the return of his full $30,000 investment because TIGC never actually had access to his money and $30,000 of the funds remaining in its account when it was frozen can thus be traced directly to him.  Roberts invested his money by means of a $30,000 cashier's check, which shows that TIGC deposited it on August 25, 1997.  According to Roberts, TIGC's bank had a policy of placing a three-day "hold" on cashier's check funds and the actual funds thus would not have become available to TIGC until August 28, 1997.  On August 27, 1997, however, the District Court entered two temporary restraining orders freezing TIGC's

4

account.  Thus, Roberts argues, his $30,000 never became available to TIGC and necessarily remained in its account when the District Court froze it on August 27.

We will assume for present purposes the truth of Roberts's allegations.[3]  Those allegations, however, establish merely that it would have been possible to trace his $30,000 to money remaining in the TIGC account, not that equity demanded he receive it all back.  According to Roberts, the bank policy on which he relies wound up depriving TIGC of access to his funds solely by reason of the date on which TIGC deposited his check.  The mere fact that it did so just two days before its account was frozen does not give Roberts equitable priority over the thousands of other victims of TIGC's fraud.  Accordingly, the District Court determined that there is no equitable basis to distinguish between early investors and those, like Roberts, who invested shortly before TIGC's account was frozen, and that all investors should thus be treated the same.  (June 9, 2000 Order at 1; Aug. 28, 2006 Order at 2 n.1.)  We cannot say that the District Court abused its wide equitable discretion in so concluding.  See, e.g., Credit Bancorp, 290 F.3d at 89; Forex Asset Mgmt., 242 F.3d at 331-32.[4]

---

[3]For this reason, we need not address Robert's argument that he was denied "equal protection" by the receiver's or District Court's alleged failure to investigate and establish these allegations.

[4]Roberts has not cited any legal authority.  We have located one appellate decision that potentially supports his position, but it is distinguishable.  In Anderson v. Stephens, 875 F.2d 76 (4th Cir. 1989), a defrauder deposited certain of his victims' checks in an account one day after it had been frozen by court order, and the bank accepted the deposit despite the freeze.  Reasoning that the effect of the freeze was to prevent the defrauder from

(continued...)

The District Court's order will be affirmed.

_____

[4](...continued)
transacting business of any kind with the account, the Fourth Circuit held that the post-freeze deposit was invalid and that the funds in question should have been returned in full to the individual investors, not combined with the defrauder's assets for pro rata distribution. See id. at 79-80. Here, by contrast, TIGC deposited Roberts's cashier's check two days before the District Court froze its account, so that deposit was perfectly valid. Even if we were to find Anderson persuasive, that distinction is dispositive. We further note that nothing in the District Court's temporary restraining orders prevented TIGC's bank from crediting already-deposited funds to TIGC's account after the freeze.