**UNITED STATES of America, Plaintiff,**

**and**

**Claremont Properties, Inc.,
Intervenor/Plaintiff–
Appellant,**

**v.**

**Jannette E. DURHAM, et al.,
Defendants–Appellees.**

**No. 95–10470.**

United States Court of Appeals,
Fifth Circuit.

June 24, 1996.

Katherine Savers McGovern, Assistant U.S. Attorney, Paul E. Coggins, U.S. Attorney's Office, Dallas, TX, for U.S.

Leila A. D'Aquin, Haynes & Boone, Dallas, TX, Marcus Montalvo, Baker & McKenzie, Dallas, TX, for Claremont Properties, Inc., intervenor/plaintiff-appellant.

Jannette E. Durham, Mesquite, TX, pro se.

Raymond R. Kramer, El Reno, OK, pro se.

Marc L. Ellison, Schlanger, Mills, Mayer and Grossberg, Houston, TX, Michael Scott Bernstein, Dallas, TX, for Sheila Suess Kennedy, claimant.

Joel D. Johnson, Warner and Smith, Fort Smith, AR, for John Putnam and Charles McRay dba Airport Properties, claimants.

Paige B. Bayoud, Dallas, TX, pro se.

Robert Robert Jersky, Washington, DC, pro se.

L.P. Mazel Realty, Brooklyn, NY, pro se.

Brandon McVey, Poplar Bluff, MO, pro se.

Fred G. Schaller, Sarasota, FL, pro se.

Frank Belgiovine, Hackensack, NJ, pro se.

San Antonio Motel Ltd., Gulf Breeze, FL, pro se.

Robert Raymond Ansiaux, Dallas, TX, for Public Storage Properties XVIII Ltd., movant.

Mark Christopher Niles, Department of Justice, Washington, DC, Robert S. Greenspan, U.S. Department of Justice, Civil Division, Washington, DC, for U.S. as amicus curiae.

Before REYNALDO G. GARZA, JONES and DENNIS, Circuit Judges.

REYNALDO G. GARZA, Circuit Judge:

## Background

Intervenor/Plaintiff–Appellant, Claremont Properties, Inc. ("Claremont"), challenges the district court's method of distributing assets seized by the United States from Defendants–Appellees, Jannette E. Durham, et al.[1] The Defendants perpetrated a "scheme to defraud consumers through an advance fee loan financing business." They created various front corporations purportedly operating a legitimate loan brokerage business in order to obtain money from consumers by falsely representing their ability to obtain financing for large projects, or to directly finance those projects.

These grifters were successful in their venture until apprehended by the FBI. A total of $806,750 was defrauded from thirteen entities or individuals. Upon Defendants' arrest, roughly $83,495.52 of the money was left. The Defendants were indicted for wire fraud, money laundering, and conducting financial transactions with money derived from unlawful activity. *See* 18 U.S.C. §§ 1343, 1956(a)(1)(A)(i), 1956(a)(1)(B)(ii), 1957 and 2. Defendants plead guilty to a single count of 18 U.S.C. §§ 1343 and 2. Upon motion from the United States, the district court permanently enjoined the Defendants from further fraudulent action and froze their assets.[2] The next order of business was to divide the

---

1. Appellees, Jannette E. Durham, et al., have taken no part in this appeal and do not challenge the arguments or actions of Appellant. The United States participates in this appeal only as amicus curiae.

2. Under 18 U.S.C. § 1345, the district court has power to enjoin the violation of federal fraud statutes and may "take other action, as is warranted to prevent a continuing and substantial injury to the United States or to any person or class of persons for whose protection the action is brought." Under § 1345 and inherent equitable power, a district court may distribute seized funds to fraud victims.

seized $83,495.52 among the thirteen claimants.

The charlatans used multiple accounts and company names to implement their scheme. However, by the end, they had only one account (Cypress, Ltd.) with assets (the $83,-495.42) at one bank, Pavilion National. It is uncontested by court or party that all but $8,803.99 of the money in the Pavilion accounts could be traced to seven claimants, one of which was Claremont Properties. Only four of these seven filed claims. The Defendants had deposited and withdrawn almost all the money defrauded from the other claimants. A few days after Claremont funds were deposited, the Defendants were arrested.

Over Claremont's objection, the district court elected in the interest of equity, to distribute the $83,000 pro rata rather than giving the bulk of it to Claremont and the other three victims whose funds had been traced. The court added the total claims, $806,750, and allocated the $83,000 by percentage against the total claim. Claremont's total claim was $161,750—20% of the total claims. Therefore it would receive only $16,-740,83. Uncontroverted evidence from the FBI showed that, if tracing were applied, Claremont was due $70,970.13 of the $83,-000.[3]

The district court rejected Claremont's bid that the court trace the funds. The court justified its decision to distribute pro rata stating,

> In determining a plan for distribution, the Court must act to determine the most equitable result. In the instant action, all claimants stand equal in terms of being victimized by the defendant defrauders. The ability to trace the seized funds to Claremont and Northernaire is the result of the merely fortuitous fact that the defrauders spent the money of the other victims first. Allowing Claremont and Northernaire to recover from the funds seized to the exclusion of the other victims under the tracing principle would be to

elevate the position of those two victims on the basis of the actions of the defrauders. The Court sees no justification in equity for this result.[4]

Order Overruling Objections of Claremont, p. 3.

The district court granted Claremont's motion to intervene in the government's action for injunctive relief, allowing Claremont to make this timely appeal. For the reasons stated herein, we affirm.

## Discussion

### A. Standard of Review

 Claremont contends that the district court was required by law to impose a constructive trust for the traced portions of the assets. Appellant thus argues that this court reviews the district court's restitution order de novo. However, when fashioning a restitution order or imposing a constructive trust, the district court is acting pursuant to its inherent equitable powers. *See United States v. Brown,* 988 F.2d 658, 661 (6th Cir. 1993); *United States v. Cen–Card Agency/C.C.A.C.,* 724 F.Supp. 313, 318 (D.N.J. 1989). In entering a restitution order, adherence to specific equitable principles, including rules concerning tracing analysis are "subject to the equitable discretion of the court." *In re Intermountain Porta Storage, Inc.,* 74 B.R. 1011, 1016 (D.C.Colo.1987). Accordingly, we will review the lower court's imposition of an equitable remedy for abuse of discretion. *S.E.C. v. AMX, International, Inc.,* 7 F.3d 71, 73 (5th Cir.1993).

### B. Distribution of Funds

 The Court is offered this question to decide: did the district court abuse its discretion in distributing the assets pro rata? Typically, when a party can trace its assets, that party is entitled to seek a constructive trust or equitable lien on its portion of those funds that remain. Restatement (First) of Restitution § 211(1) (1937); *Cunningham v.*

---

**3.** An FBI Special Agent traced $70,000 of Claremont's payments that were deposited and never withdrawn.

**4.** The United States initially was able to trace funds for only two of the claimants, Claremont and Northernaire.

*Brown,* 265 U.S. 1, 11, 44 S.Ct. 424, 426, 68 L.Ed. 873 (1924) (discussing the infamous Ponzi scheme). A constructive trust may be created regardless of the intentions of the parties "where equity and justice demand." *Rosenberg v. Collins,* 624 F.2d 659, 663 (5th Cir.1980). When tracing is impossible, a claimant has merely a personal claim against the wrongdoer and the funds are distributed ratably. *Cunningham,* 265 U.S. at 11, 44 S.Ct. at 426; Restatement (First) of Restitution § 213 cmt. c., illus. 3–6 (1937).

■ No one can dispute that tracing would have been permissible under the circumstances of this case. *Cunningham,* 265 U.S. at 11, 44 S.Ct. at 426. Claremont identified its funds and had a right *to seek* imposition of a constructive trust on the traced funds. The government in fact suggested that Claremont receive the traced funds. However, the court, in exercising its discretionary authority in equity, was not obliged to apply tracing. *See S.E.C. v. Elliott,* 953 F.2d 1560 (11th Cir.1993) (district court's decision to disallow tracing was well within broad equitable powers); *United States v. Vanguard Inv. Co.,* 6 F.3d 222, 227 (4th Cir.1993) ("a district court in its discretionary supervision of an equitable receivership may deny remedies like rescission and restitution where the equities of the situation suggest such a denial would be appropriate."). As noted above, the court imposes a constructive trust only *"where equity and justice demand."* *Rosenberg,* 624 F.2d at 663.

The lower court in this case chose not to impose a constructive trust in Claremont's favor because it seemed inequitable to allow Claremont to benefit merely because the defendants spent the other victims' funds first. Claremont would obtain a preferred claim over funds if the court were to impose the constructive trust. To the district court, all the fraud victims were in equal positions and should be treated as such. We cannot say that the district court's assessment of the facts and the resulting order were an abuse of discretion.

Sitting in equity, the district court is a "court of conscience." *Wilson v. Wall,* 73 U.S. (6 Wall.) 83, 90, 18 L.Ed. 727 (1867). Acting on that conscience, the lower court in the instant case rationally considered the positions of the victims and held that following the tracing principle would be inequitable. Claremont's frustration with the lower court's ruling is understandable but the court was not required to impose a constructive trust in Claremont's favor. Because the court used its discretion in a logical way to divide the money, the court committed no error requiring our intervention. For us to hold otherwise would be to chain the hands of the court in Equity to do what is right under the circumstances. We will not rob the lower court of the discretion essential to its function. The restitution order is AFFIRMED.