**Revised February 28, 2001**

**UNITED STATES COURT OF APPEALS**
**FIFTH CIRCUIT**

_____

No. 00-10224

_____

SECURITIES AND EXCHANGE COMMISSION,

Plaintiff,

versus

FOREX ASSET MANAGEMENT LLC, Etc; ET AL,

Defendants.

MICHAEL WHITBECK; DONNA WHITBECK,

Movants - Appellants,

versus

DAN R. WALLER, Receiver,

Appellee.

Appeal from the United States District Court
For the Northern District of Texas

February 26, 2001

Before WIENER, BARKSDALE, and EMILIO M. GARZA, Circuit Judges.

EMILIO M. GARZA, Circuit Judge:

Michael and Donna Whitbeck ("the Whitbecks") appeal the district court's order approving of the decision by Dan R. Waller ("Receiver"), the receiver appointed to oversee the assets connected with Forex Asset Management, L.L.C. ("Forex"), to distribute the assets of Forex on a pro rata basis. We affirm.

**I**

The Whitbecks learned of a foreign currency investment opportunity with Forex through a radio infomercial given by Kosova, the individual who allegedly controls Forex. Thereafter, the Whitbecks attended a seminar regarding investment opportunities with Forex, and wrote a check to Forex for $100,000. Several months later, after receiving statements reflecting a profitable return on their $100,000 investment, the Whitbecks attended another seminar. After the seminar, the Whitbecks decided to invest additional money, and they took out a loan of $800,000 in order to do so. The Whitbecks then wrote a check to Forex for $800,000, which they gave to Kosova. Kosova informed the Whitbecks that their funds would be placed in a separate account in order to invest the money more aggressively.

Kosova deposited the Whitbecks' $800,000 check in an account held by FAM Preferred Trading Corporation ("FAM Preferred") at NationsBank.[1] The records documenting the FAM Preferred account's transactions show only one deposit, specifically the Whitbecks' $800,000 check.

In addition to the account at NationsBank, FAM Preferred also maintained a brokerage account with Rosenthal Collins Group, L.P. ("Rosenthal"). After depositing the $800,000 into the

---

[1]     FAM Preferred is a separate corporation from Forex.

FAM Preferred account, Kosova transferred $750,000 into the Rosenthal account. The $750,000 deposited into the Rosenthal account was the only deposit made into that account. The Whitbecks assert that the only other withdrawals from the NationsBank account were to cover the cost of the wire transfer fees, and an $8,500 check to themselves.

After the Whitbecks invested $900,000 with Forex, the Securities and Exchange Commission ("SEC") filed a complaint against Kosova and Forex for allegedly engaging in a scheme to defraud investors. As a consequence of the SEC complaint, the assets of Forex, Kosova and the entities owned and controlled by Kosova were frozen, and a receiver was appointed.[2] The Whitbecks were not named as parties to the suit between the SEC, Forex and Kosova, nor did they move to intervene in accordance with Federal Rule of Civil Procedure 24.

The Receiver appointed to manage the Forex-Kosova assets determined that the Forex program had accumulated approximately $2.5 million of indebtedness, and retained approximately $1,150,000 worth of assets.[3] After analyzing the debts owed and calculating the amount of the remaining assets, the Receiver determined that the assets should be distributed on a pro rata basis in order to treat the creditors equally because none of the creditors had a "secured claim . . . [or] legal preference." According to the plan, each investor "would share in the distribution based upon the percentage of their loss as measured against the losses of all of the unpaid claimants."

Prior to approving the Receiver's distribution plan, the district court sought objections to the plan, for which it received two, one of which was from the Whitbecks. Pursuant to the receivership

---

[2]      At the time the accounts were frozen there was $27, 372 in the NationsBank account and $750,000 in the Rosenthal account.

[3]      Although the Receiver identified 87 investors, who had invested over four million dollars, forty-five of the investors previously had their investments returned to them.

plan, the Whitbecks' $800,000 investment was to be treated identically to the other Forex investment funds. This was because the Receiver determined that the $800,000, while placed in a separate account, was simply another investment in the Forex foreign currency program, and therefore should be analyzed similarly to the other investors' contributions. To support its position, the Receiver noted that the Whitbecks wrote both their $800,000 and $100,000 checks to Forex. Therefore, the Whitbecks' investment with Forex was calculated at $900,000, of which they were owed $878,000.[4] Because they were owed $878,000, under a pro rata distribution they would receive 33.09 percent of the remaining assets.

The Whitbecks, however, argued that because their $800,000 check was placed in a segregated account they should receive all of the funds that remained in the FAM Preferred and Rosenthal accounts. The Whitbecks did not, however, assert that something other than a pro rata distribution should be performed with regard to their initial $100,000 investment, as these funds were commingled with other Forex investors' funds.

After considering the Whitbecks' objections, the district court affirmed the plan because it determined that the "Receiver's Plan provide[d] the most equitable means of addressing all of the victim's harms[,] . . . [and] the Whitbecks [did] not present[] any facts that would elevate their claims above those of the other investors." The court further noted that it was afforded "wide discretion in the supervision of an equity receivership . . . [and that it could] approve a plan as long as it [was] fair and equitable."

**II**

---

[4]     The Receiver found that $22,000 of the $800,000 was returned to the Whitbecks shortly after their deposit.

The Whitbecks appeal the district court's order approving the Receiver's distribution plan. Prior to reviewing the merits of the Whitbecks' appeal, there are two threshold issues that require our attention. First, we must determine whether the Whitbecks have standing to bring this appeal. Although the parties have not raised this issue, we may raise it *sua sponte*. *See Lang v. French*, 154 F.3d 217, 222 n.28 (5th Cir. 1998) (reaffirming the principle that questions regarding standing may be "raised by an appellate court *sua sponte*"). Our concern regarding the Whitbecks' standing stems from the fact that the Whitbecks were not named as parties in the SEC's complaint, nor did they seek to intervene in accordance with Rule 24. As the Supreme Court stated in *Marino v. Ortiz*, 484 U.S. 301, 304,108 S.Ct. 586, 588, 98 L.Ed.2d. 629 (1988), "[t]he rule that only parties to a lawsuit, or those that properly become parties, may appeal an adverse judgment is well settled."

While there is a general rule that non-parties to a suit do not have standing to appeal, we have previously stated that exceptions exist. For instance, in *Castillo v. Cameron County, Tex.*, No. 99-41217, 2001 WL 13282 (5th Cir. Jan. 5, 2001), where we were asked to determine whether Texas had standing to seek review of a series of injunctions after it was dismissed from the underlying suit, we reaffirmed the principle that "'[i]f the decree affects [a third party's] interests, he is often allowed to appeal.'" *Id*. at 349, *citing United States v. Chagra*, 701 F.2d 354, 358-59 (5th Cir. 1983); *see also In re Beef Indus. Antitrust Litig.*, 589 F.2d 786, 788 (5th Cir. 1979) (stating that "[t]he Fifth Circuit has been lenient in hearing the appeals of non-parties").

Additionally, in *Castillo* we emphasized that this Circuit applies a three-part test when deciding whether a non-party may appeal. We inquire "'whether "the non-part[y] actually participated in the proceedings below, the equities weigh in favor of hearing the appeal, and the non-part[y] ha[s] a personal stake in the outcome."'" *Id*. (citations omitted). Moreover, we favorably

cited a case by our sister circuit, *Commodity Futures Trading Comm'n v. Topworth Int'l, Ltd.*, 205 F.3d 1107, 1113 (9th Cir. 1999), in which the court found that a non-party creditor who objected to a proposed receivership distribution plan had standing because he had a legitimate interest in the proceedings, and had participated adequately in the proceedings by timely filing his claim, filing objections, and attending the hearing on the claim. Furthermore, in *Castillo* we reaffirmed the statement that we made in *Chagra* that "[n]on-party creditors who assert rights in receivership proceedings may appeal orders affecting their legitimate interests." *Id.*, *citing Chagra*, 701 F.2d at 358-59.

To determine whether the Whitbecks' appeal is proper, we apply our three-part test. First, in accordance with the first prong of the test, we find that the Whitbecks participated in the proceedings in the district court to the extent their interests were involved. The Whitbecks' participation is demonstrated by three actions: (1) their filing a notice that they were an interested party; (2) their moving for a turnover of the assets in the FAM Preferred account and replying to the Receiver's response to their turnover request; and (3) their filing an objection to the Receiver's proposed distribution plan.

Second, the equities weigh in favor of hearing the appeal because the distribution order substantially affects the Whitbecks' interests and the district court solicited objections to the distribution order. Moreover, unlike other cases in which standing has been found not to exist, hearing the Whitbecks' appeal will not frustrate another legal principle. *See Searcy v. Philips Elecs. N. Am. Corp.*, 117 F.3d 154, 156 (5th Cir. 1997) (noting that we have more strictly enforced the rule that non-parties may not appeal in the class action context because to do otherwise "could frustrate the Rule 23 mechanism"), *citing Walker v. City of Mesquite*, 858 F.2d 1071, 1074 (5th Cir. 1988)

(stating that nonnamed class members should seek to intervene if they desire to appeal a decision regarding the class because to hear an appeal by a nonnamed party who has not intervened "would result in the frustration of the purpose behind class litigation").

Third, we find that the Whitbecks have a personal stake in the outcome of the distribution plan because the method by which the funds are distributed, specifically whether the funds placed in the FAM Preferred account are distributed pro rata or given exclusively to the Whitbecks, will substantially alter the amount allocated to the Whitbecks under the distribution plan.

Accordingly, while the Whitbecks were not parties to the suit nor did they seek to intervene, we find that they have standing to appeal because they meet our three-part test for non-party standing. We caution, however, that this decision does not indicate that parties will be given a free pass to avoid complying with the rules of intervention.[5]

The second threshold issue with which we are presented is whether we may properly exercise jurisdiction over this appeal because it is either a "'final decision under 28 U.S.C. § 1291, [an] interlocutory decision under 28 U.S.C. § 1292, [a] nonfinal judgment certified as final under [] FED. R. CIV. P. 54(b), or some other nonfinal order or judgment to which an exception applies." *See Briargrove Shopping Ctr. Joint Venture v. Pilgrim Enter., Inc.*, 170 F.3d 536, 538 (5th Cir. 1999).

The Whitbecks assert that this is an appeal from a final order, and therefore we have jurisdiction under 28 U.S.C. § 1291. We disagree with the Whitbecks that the district court's order

---

[5]     We note that granting the parties standing in the present case is at variance with the decisions of the Third and Seventh Circuits. *See S.E.C. v. Black*, 163 F.3d 188, 196 (3d Cir. 1998) (stating that "*Marino* only requires that a court deny an appeal from non-parties who have not obtained or sought intervenor status."); *see S.E.C. v. Wozniak*, 33 F.3d 13, 14 (7th Cir. 1994) (stating that a non-party who did not intervene may not appeal). However, this case only emphasizes the circuit split that previously existed based on our analysis of the rule of non-party standing in *Castillo* and our previous cases.

is a final order because it does not "'end the litigation on the merits [] leav[ing] nothing for the court to do but execute the judgment.'" *See id*. at 538-39. Instead, the decision is only one part of the overall litigation by the SEC. Consequently, we must determine whether there is another source of jurisdiction to hear the appeal.

We believe that the collateral order doctrine provides the authority to review the order on appeal.[6] An order is appealable by virtue of the collateral order doctrine if it "fall[s] [into] that small class [of decisions] which finally determine claims of right separable from, and collateral to, rights asserted in the action, too important to be denied review and too independent of the cause itself to require that appellate consideration be deferred until the whole case is adjudicated." *Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541, 546, 69 S.Ct. 1221, 1225-26, 93 L.Ed.1528 (1949).

In order to determine whether an order falls within the class of decisions discussed in *Cohen*, the order must meet each of the following three requirements: "'[it must] conclusively determine the disputed question, resolve an important issue completely separate from the merits of the action, and be effectively unreviewable on appeal from a final judgment.'" *Dardar v. Lafourche Realty Co., Inc.*, 849 F.2d 955, 957 (5th Cir. 1988), *citing Coopers & Lybrand v. Livesay*, 437 U.S. 463, 468, 98 S.Ct. 2454, 2458, 57 L.Ed.2d. 351 (1978).

The decision by the district court to approve the Receiver's distribution plan fits within the confines of the collateral order doctrine. First, it conclusively determines the manner in which the receivership assets should be distributed. Second, it resolves an important issue regarding distribution of the assets, which is separate from the merits of the SEC's complaint against Forex and Kosova.

---

[6]     Because we find that we have jurisdiction under the collateral order doctrine, we do not consider whether § 1292(a)(2) also provides jurisdiction.

Third, it is effectively unreviewable on appeal because the assets from the receivership will be distributed, and likely unrecoverable, long before the action brought by the SEC is subject to appellate review. Therefore, because this case meets the requirements of the collateral order doctrine, we retain jurisdiction to hear the Whitbecks' appeal.

Turning to the merits of the Whitbecks' appeal, we analyze the district court's decision to approve the Receiver's distribution plan for an abuse of discretion because the district court was "acting pursuant to its inherent equitable powers" when it approved the plan. *United States v. Durham*, 86 F.3d 70, 72 (5th Cir. 1996) (noting that the abuse of discretion standard applies when a district court is "impos[ing] an equitable remedy"). Furthermore, "'[i]n shaping equity decrees the trial court is vested with broad discretionary power[,] [and] appellate review is correspondingly narrow.'" *Quenzer v. United States*, 19 F.3d 163, 165 (5th Cir. 1993).

Both the district court and the Receiver rely on *Durham* for the proposition that a pro rata distribution was a permissible equitable remedy in the present case. In *Durham*, the defendants were engaged in a "scheme to defraud [investors] through an advance fee loan financing business." *Durham*, 86 F.3d at 71. Although the majority of the investors' funds were dissipated by the time the defendants' assets were frozen, approximately $83,000 was available for distribution. Of this amount, all but approximately $8,800 was traceable to seven of the thirteen investors. One of the investors, Claremont, traced to itself approximately $70,000 of the $83,000. Despite the uncontroverted evidence that $70,000 of the $83,000 was traceable to Claremont, the district court determined that equity required that the money be distributed pro rata. On appeal, we upheld the district court's decision noting that "[i]n entering a restitution order, adherence to specific equitable principles, including rules concerning tracing are 'subject to the equitable discretion of the court.'"

*Id*. at 72 (citations omitted). Although we acknowledged that "tracing would have been permissible," we upheld the decision of the district court because the court considered the positions of the various investors and, applying its discretion, determined that allowing Claremont to trace its funds would prove inequitable. *Id*. at 72-73.

Applying the principles enunciated in *Durham*, the district court in this case did not abuse its discretion in rejecting the Whitbecks' claim, and determining that it was more equitable to distribute the remaining Forex assets pro rata. The district court carefully considered the Whitbecks' arguments and the position of the other fraud victims. Further, the district court determined that the facts did not support a remedy that would elevate the Whitbecks' claim above the other victims, and accordingly determined that a pro rata distribution would provide a fair and equitable remedy. Thus, the district court "used its discretion in a logical way to divide the money," and, therefore, did not abuse its discretion in approving the plan. *Id*. at 73.

The Whitbecks, however, argue that the remaining balance in the FAM Preferred accounts, namely $777,372, should not be distributed pro rata because the only deposit made into those accounts was the proceeds from their $800,000 investment. The Whitbecks proffer arguments under federal receivership law, Texas common law regarding constructive trusts, and analogous bankruptcy law to support their position.

First, the Whitbecks claim that *Durham* is inapplicable because it involved tracing, whereas the present case does not involve tracing because the funds were not commingled; this is a distinction without a difference. In both *Durham* and the present case we were asked to review a district court's decision granting one form of equitable relief over another. While it may have been permissible in *Durham* for the district court to have traced the funds, and while it may have been permissible in the

present case for the district court to have allocated all of the segregated funds to the Whitbecks, in neither case was the district court required to choose the equitable remedy requested by Claremont or the Whitbecks. Rather, in both cases the district court, acting as a court of equity, was afforded the discretion to determine the most equitable remedy. We will not disturb a district court's permissible exercise of discretion on appeal.

Despite the *Durham* decision, the Whitbecks urge that the apposite analysis for the present case is found in the Fourth Circuit's decision in *Anderson v. Stephens*, 875 F.2d 76 (4th Cir. 1989). In *Anderson*, the Fourth Circuit decided "the narrow issue of whether it was proper for the district court to rule that checks deposited in [an] account . . . after entry of [a] [] freeze order were to be included in the general account and distributed pro rata." *Id*. at 78. The Fourth Circuit held that the funds were not to be distributed pro rata, but rather were to be returned to the ori ginal investors, because "the purpose of the freeze order was to stop all activity of the [] account," and, therefore, nothing could have been added to the account after it was frozen. *Id*. at 80. Although the Whitbecks argue that *Anderson* stands for the proposition that segregated funds should not be subject to a pro rata distribution, we find the court's narrow holding in *Anderson* to pivot on the status of the accounts as frozen, rather than the segregated nature of the funds. Therefore, the reasoning applied in *Anderson* is inapplicable to the present case.

The Whitbecks also claim that they are entitled to the FAM Preferred funds because FAM Preferred is a separate legal entity and, "when a fraudulent investment scheme involves more than one investment program, the investors in each program are entitled to priority in the assets of their particular program." The Whitbecks, however, did not raise this argument in the district court when they objected to the distribution plan, and therefore this argument is forfeited. *See Governor & Co.*

-11-

*of the Bank of Scotland v. Maria S.J. MV*, 211 F.3d 261, 265 n.3 (5th Cir. 2000) (noting that when a "claim [i]s not presented in district court, the [movants] must show the existence of a plain error that affected their substantial rights, and also must persuade us to exercise our discretion to correct it") (citations omitted).

Additionally, the Whitbecks argue that they are entitled to a constructive trust over the money in the FAM Preferred accounts under Texas common law. In *Durham*, however, this Court stated that even where it is permissible to impose a constructive trust the district court does so "only 'where equity and justice demand.'" *Durham*, 86 F.3d at 73, *quoting Rosenberg v. Collins*, 624 F.2d 659, 663 (5th Cir. 1980). The Whitbecks have not shown that the district court abused its discretion in determining that equity and justice called for a different remedy in this case.

The Whitbecks further contend that analogous bankruptcy law dictates that they are entitled to all of the remaining assets in the FAM Preferred accounts. Inasmuch as this case may be resolved by application of *Durham*, which involved a similar type of distribution as the one presented in this case, we need not rely on bankruptcy law for this non-bankruptcy case.

Finally, the Whitbecks contend that the district court erred in approving the plan of distribution to the extent that it proposes to deduct any expenses of the receivership from their funds in the FAM Preferred accounts, since they did not benefit from the receivership. The Whitbecks cite no authority for this argument, and have made no showing that the district court abused its discretion in approving a plan that would deduct the Receiver's fees and expenses from the total assets prior to distribution. Accordingly, this argument likewise fails.

### III

Because we find that the district court did not abuse its discretion when it approved the

Receiver's plan, we AFFIRM.