09-3583-cv
*Securities and Exchange Commission v. Byers*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## SUMMARY ORDER

**Rulings by summary order do not have precedential effect. Citation to a summary order filed on or after January 1, 2007, is permitted and is governed by Federal Rule of Appellate Procedure 32.1 and this court's Local Rule 32.1.1. When citing a summary order in a document filed with this court, a party must cite either the Federal Appendix or an electronic database (with the notation "summary order"). A party citing a summary order must serve a copy of it on any party not represented by counsel.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Daniel Patrick Moynihan United States Courthouse, 500 Pearl Street, in the City of New York, on the 25th day of October, two thousand ten.

PRESENT:   RALPH K. WINTER
                    DEBRA ANN LIVINGSTON
                    GERARD E. LYNCH
                              *Circuit Judges*,

SECURITIES AND EXCHANGE COMMISSION,
          *Plaintiff-Appellee*,

STEVEN BYERS, WEXTRUST CAPITAL, LLC, WEXTRUST EQUITY PARTNERS, LLC, WEXTRUST DEVELOPMENT GROUP, LLC, WEXTRUST SECURITIES, LLC, AXELA HOSPITALITY, LLC, ELKA SHERESHEVSKY,
          *Defendants*,

JOSEPH SHERESHEVSKY,
          *Third-Party-Plaintiff*,

AVROHOM SHERESHEVSKY, HOLMES REVOCABLE TRUST,
          *Intervenors-Defendants*,

TIMOTHY J. COLEMAN,
          *Receiver-Appellee*,

     -v.-                                           Nos. 09-3583-cv (Lead), 09-3593-cv (Con),
                                                          09-3596-cv (Con), 09-3633-cv (Con)
MARTIN MALEK,
          *Claimant-Appellant*,

SPACE PARK ISSB PARTNERSHIP,
         *Interested-Party*,

TCF NATIONAL BANK, REGIONS BANK,
         *Movant-Appellant*,

SPACE PARK AIM PARTNERSHIP,
         *Movant*,

AMNON COHEN,
         *Third-Party-Defendant*.

MARK FORRESTER (Emily Alexander, *on the brief*),Thomas Alexander & Forrester LLP, Venice, California, *for Claimant-Appellant*.

DAVID LISITZA, Senior Counsel (John W. Avery, Senior Litigation Counsel, Jacob H. Stillman, Solicitor, Mark D. Cahn, Deputy General Counsel, and David M. Becker, General Counsel, *on the brief*), Securities and Exchange Commission, Washington, DC, *for Plaintiff-Appellee*.

TIMOTHY J. COLEMAN, Freshfields Bruckhaus Deringer US LLP, Washington, DC (John K. Warren, Freshfields Bruckhaus Deringer US LLP, Washington, DC, and Mark S. Radke, Arent Fox LLP, Washington, DC, *on the brief*), *for Receiver-Appellee*.

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court be **AFFIRMED**.

Claimant-Appellant Martin Malek ("Malek") appeals from an order entered July 24, 2009 in the United States District Court for the Southern District of New York (Chin, *J.*), approving a plan of distribution of receivership assets (the "Distribution Plan") as proposed by Receiver-Appellee Timothy J. Coleman ("Coleman" or "Receiver"). *See SEC v. Byers*, 637 F. Supp. 2d 166 (S.D.N.Y. 2009). This case arises out of the placement into receivership, after discovery of a large Ponzi scheme, of the assets of several Wextrust companies and affiliated entities (together, the "Wextrust

Entities"). On appeal, Malek advances three claims of error. First, he asserts that the district court erred in approving a distribution plan that included the assets of certain commodity-trading funds (the "Commodity Funds") operated by one of the Wextrust Entities. Second, Malek asserts that the district court exceeded its equitable authority in approving a distribution plan that effectively liquidates the receivership estate. Lastly, Malek asserts that the district court erred in approving a *pro rata* plan of distribution as to the Commodity Funds. We assume the parties' familiarity with the underlying facts and procedural history of the case.

As an initial matter, the parties dispute the appropriate standard of review to be applied to Malek's challenges. Malek asserts that the first two questions—as to the inclusion of the Commodity Funds in the receivership estate and the approval of a plan liquidating that estate—are properly characterized as questions of law, and should be reviewed *de novo*. Coleman, on the contrary, argues that an abuse of discretion standard is appropriate. "According to the Supreme Court, '[i]n shaping equity decrees, [a] trial court is vested with broad discretionary power; appellate review is correspondingly narrow.'" *SEC v. Certain Unknown Purchasers of the Common Stock of and Call Options for the Common Stock of Santa Fe Int'l Corp.*, 817 F.2d 1018, 1020 (2d Cir. 1987) (quoting *Lemon v. Kurtzman*, 411 U.S. 192, 200 (1973)). Moreover, we have stated that "[w]e review [a] District Court's decision relating to the choice of distribution plan for the receivership estate for abuse of discretion." *SEC v. Credit Bancorp, Ltd.*, 290 F.3d 80, 87 (2d Cir. 2002). We need not determine in this case whether these principles counsel in favor of *de novo* or abuse of discretion review with regard to the issues identified by Malek. Regardless of the appropriate standard of review, Malek's challenges fail.

## I. Inclusion of the Commodity Funds in the Distribution Plan

First, Malek contends that the district court erred in approving the Distribution Plan due to its inclusion of the Commodity Funds in the receivership estate subject to the Plan. Although neither the Securities Act of 1933 nor the Securities Exchange Act of 1934 expressly vests the power to appoint receivers in the district courts, "courts have consistently held that such power exists, where necessary to prevent the dissipation of a defendant's assets pending further action by the court." *SEC v. Am. Bd. of Trade, Inc.*, 830 F.2d 431, 436 (2d Cir. 1987) (internal citation omitted). "A primary purpose of appointing a receiver is to conserve the existing estate." *Esbitt v. Dutch-Am. Mercantile Grp.*, 335 F.2d 141, 143 (2d Cir. 1964). In furtherance of this goal, the district court froze, and ultimately included in the receivership estate, all assets "held by, or under the direct or indirect control of the [d]efendants, including, but not limited to, entities owned or controlled by, related to, or associated or affiliated with the [d]efendant Wextrust Entities and the limited liability companies they control or have an ownership interest in." J.A. 157. The Commodity Funds were quite clearly included within this broad grant, and appropriately included in the receivership estate.

While "the power of a securities receiver is not without limits," *Eberhard v. Marcu*, 530 F.3d 122, 132 (2d Cir. 2008), a federal receiver is appointed, under the district court's broad equitable discretion, "to restore to a defrauded entity or defrauded persons that which was fraudulently diverted from its or their custody and control." *SEC v. Shiv*, 379 F. Supp. 2d 609, 618 (S.D.N.Y. 2005). Malek relies heavily on the proposition that, under federal regulations governing the commodity futures trading industry, WexTrade Commodity Managers, LLC ("WCM"), the statutory manager of the Commodity Funds, was not *permitted* to own any part of the Funds. *See, e.g.*, 17 C.F.R. § 4.20(a)(1). As the record demonstrates, however, Wextrust and its principals paid little

4

regard to the letter of those regulations by, for example, regularly commingling the Commodity Funds' assets with other Wextrust assets. *See, e.g.*, J.A. 1082. As the district court appropriately noted, Malek's arguments against the inclusion of the Commodity Funds in the receivership estate are "premised on a misunderstanding of the Receiver's role," since the "Receiver is charged with protecting the interests of all investors in the Wextrust [E]ntities, and he has the authority to assert claims on behalf of any of those entities." *Byers*, 637 F. Supp. 2d at 181. Nor is there merit to Malek's contention that the principals of the Wextrust Entities, specifically Steven Byers and Joseph Shereshevsky, did not exercise control over the Commodity Funds. As discussed below, this proposition is belied by the record.

## II. Approval of a Distribution Plan Liquidating the Estate

Next, Malek argues that the district court exceeded its equitable authority in approving a distribution plan that effectively liquidated the receivership estate. First, there is some merit to Coleman's argument that Malek did not object to the district court's authority on this ground below, and thus forfeited the argument on appeal. Neither Malek nor Harris Kay, former counsel to eight Commodity Fund investors who sought to intervene in this matter below, objected to the Plan on the ground that it exceeded the district court's equitable authority by effecting a liquidation, despite multiple submissions and opportunities to address the court. *Cf. SEC v. Forex Asset Mgmt. LLC*, 242 F.3d 325, 332 (5th Cir. 2001) ("[Appellants] . . . did not raise this argument in the district court when they objected to the distribution plan, and therefore this argument is forfeited."). In response, Malek relies on extensive briefing provided to the district court by dozens of interested parties, some of whom did object on this ground, as well as the district court's admonitions, addressing objectors'

5

oral statements in opposition to the Distribution Plan, that arguments ought not be repeated. Whether or not Malek forfeited this argument, however, we find that the district court did not abuse its equitable discretion in approving the Distribution Plan, despite its effective liquidation of the receivership estate.

First, Malek's argument that the Plan, in liquidating the assets of the receivership, "exceeds the intent of the SEC and of the District Court," Appellant's Br. 28, is contradicted by the express language of the court's order appointing the Receiver, which authorized the Receiver, after notice to all parties and creditors and approval by the court, to sell receivership assets. J.A. 654. In any event, to the extent that Malek questions the court's intent to authorize the Receiver to liquidate the estate, we reject that challenge because the court made its intent clear when it expressly approved the Receiver's Plan to liquidate the estate. Moreover, the SEC, in its brief in this matter as Plaintiff-Appellee, specifically denies the claim that the Plan exceeded its intent in seeking appointment of a receiver.

It is true that this Court has consistently expressed a preference against the liquidation of defendant corporations through the mechanism of federal securities receiverships, as opposed to through the bankruptcy courts. *See, e.g.*, *Eberhard*, 530 F.3d at 132 (noting that "receivership should not be used as an alternative to bankruptcy"); *Am. Bd. of Trade*, 830 F.2d at 436 (noting frequent admonition that "equity receiverships should not be used to effect the liquidation of defendants in actions brought under the securities laws"); *Esbitt*, 335 F.2d at 143 ("We see no reason why violation of the Securities Act should result in the liquidation of an insolvent corporation via an equity receivership instead of the normal bankruptcy procedures . . . ."). Nevertheless, in *Credit Bancorp*, we upheld the district court's approval of a distribution plan similar to the one at issue,

6

effecting a partial liquidation of the receivership estate with subsequent distributions to occur in the future as additional assets became liquid or otherwise available for distribution, and without discussion of the district court's authority to do so. *See Credit Bancorp*, 290 F.3d at 85; *cf. Shiv*, 379 F. Supp. 2d at 617 (arguing that, with the *Credit Bancorp* decision, this Court "extended the Receiver's equity jurisdiction to trace and repatriate funds from many discrete accounts . . . back to the rightful owners, ratably in proportion to their losses"). Further, despite our reservations about liquidation occurring through receivership, "we have never vacated or modified a receivership order on the ground that a district court improperly attempted to effect a liquidation." *Am. Bd. of Trade*, 830 F.2d at 437. Such restraint is particularly appropriate where, as here, "the receivership has progressed almost to completion . . . and it would apparently not be in the interests of the parties to direct that further proceedings be diverted into bankruptcy channels." *Esbitt*, 335 F.2d at 143; *see also Am. Bd. of Trade*, 830 F.2d at 436.

Here, both the Receiver and the district court made detailed findings, with the aid of experts, that liquidation or reorganization through bankruptcy would be unfavorable to the receivership estate. The Receiver noted that the initiation of bankruptcy proceedings would "increase the administrative costs to be borne by the receivership estate," would cause victims to "wait significantly longer before receiving any payments," and would forfeit the "latitude enjoyed by courts overseeing equity receiverships to carefully craft a particularized plan to achieve the most equitable distribution possible." J.A. 1320. The district court similarly concluded, upon careful review of the fiscal circumstances of the Wextrust Entities, that "it would be inequitable to force the case into bankruptcy." *Byers*, 637 F. Supp. 2d at 176. On the basis of the record before us, we agree that, at this juncture, it would "not be in the interests of the parties" to divert these proceedings into

7

the bankruptcy courts. *Esbitt*, 335 F.2d at 143. Nor is there any indication that any non-victim creditors of the Wextrust Entities had any interest in the estate that would have been protected by bankruptcy proceedings but that were impaired by the liquidation plan. Accordingly, we conclude that the district court did not abuse its equitable discretion in approving the Distribution Plan's liquidation of the receivership estate.

## III. Approval of a *Pro Rata* Distribution

Lastly, Malek claims that the district court erred in approving a *pro rata* distribution as to the Commodity Funds. As discussed above, "[w]e review a district court's decision relating to the choice of distribution plan for a receivership estate for abuse of discretion," *Credit Bancorp*, 290 F.3d at 87, and find none here. "Courts have favored *pro rata* distribution of assets where . . . the funds of the defrauded victims were commingled and where victims were similarly situated with respect to their relationship to the defrauders." *Id.* at 88-89. In fact, the "use of a *pro rata* distribution has been deemed especially appropriate for fraud victims of a Ponzi scheme." *Id.* at 89 (internal quotation marks omitted). This preference for *pro rata* distribution persists even where some victims' funds are theoretically traceable, since "[i]n such a scheme, whether at any given moment a particular customer's assets are traceable" is little more than a "merely fortuitous fact" based on which funds the defrauders have chosen to misappropriate first. *Id.* at 89 (internal quotation marks omitted). Further, we review the district court's findings of fact that the Commodity Funds were "commingled" and that their investors were "similarly situated" to other Wextrust investors only for clear error. *See Maloney v. Soc. Sec. Admin.*, 517 F.3d 70, 74 (2d Cir. 2008). Here, accordingly, we find no abuse of discretion in the district court's well-reasoned finding

8

that a *pro rata* distribution was the most equitable remedy for the fraud at issue.

As in the original Ponzi scheme case, this is "a case the circumstances of which call strongly for the principle that equality is equity." *Cunningham v. Brown*, 265 U.S. 1, 13 (1924). We need not decide here whether, as Malek contends, the district court erroneously suggested that *any* commingling of assets suffices to permit inclusion of funds in the *pro rata* distribution plan. Whether or not some threshold level of commingling is necessary, on the facts of this case, the district court properly included the assets of the Commodity Funds in the Plan, given the substantial evidence that those assets had been extensively commingled with the assets of other Wextrust investors. *See* J.A. 1082 (declaration of accountant that "the commingling in the Commodity Funds fits a consistent pattern in which the principals of WexTrust would move money throughout the corporate family without regard to any corporate formalities"). On frequent occasions, Wextrust transferred other, unrelated monies into the Commodity Funds to cover fraud-related shortfalls in customers' accounts, and the Commodity Funds made several "loans" to Wextrust Capital, LLC. Nor can we determine that the district court's finding that the Commodity Fund investors were similarly situated to other Wextrust investors was clearly erroneous. The Commodity Funds were specifically marketed as part of the Wextrust Entities' family of investments, and were under the significant control of Wextrust's principals. WCM, the Funds' statutory manager, was managed by Wextrust Capital, LLC, and operated out of its Chicago office. Both Byers and Shereshevsky were principals of Wextrust Capital, LLC, and Shereshevsky was a principal of WCM, holding signatory authority over its escrow accounts. *Cf. Lizardo v. Denny's, Inc.*, 270 F.3d 94, 101 (2d Cir. 2001) (noting, in different context, that to be similarly situated, "their circumstances need not be identical, but there should be a reasonably close resemblance of facts and circumstances"). Finally, we note

9

that this is not a situation in which the assets in the Commodity Funds were "segregated in the manner of true trust accounts" or "had never been placed in the defrauder's control," as in cases in which some courts have permitted the return of identifiable assets to particular victims. *See Credit Bancorp*, 290 F.3d at 90. Accordingly, we cannot conclude that the district court abused its discretion in approving the Distribution Plan's *pro rata* distribution of the receivership estate.

We have considered all of Malek's remaining arguments and find them to be without merit. For the foregoing reasons, the judgment of the district court is hereby **AFFIRMED**.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk

10